ESTATE OF ROSECRANTZ: BANKERS TRUST COMPANY and others, Appellants, vs. GRAVES, Trustee, and others, Respondents.

*April 10—May 6, 1924.*

*Wills: Construction: Unambiguous language: Intention of testator: Survivorship: Severance of marital relationship as equivalent to death.*

1. Under a will devising an estate in trust to testator's sons, to be terminated if the sons survive their wives, the divorce of a son and his wife did not make the son the survivor of the wife, the word "survive," used in its natural and ordinary sense, meaning "to outlive." p. 646.

2. The will in this case is construed to mean that the trust estate shall not be terminated until the death of the wife of the testator's son at the time the will was executed.   p. 647.   .

3. Where the language used by testator in his will is plain and unambiguous and its meaning clear and definite, no necessity for construction or interpretation exists.   p. 647.

4. Where a testator used no language appropriate to express an intention or purpose other than is plainly expressed, the court cannot, in construing his will, find from the surrounding facts and circumstances an intention of the testator which would defeat the will.   p. 647.

APPEAL from a judgment of the county court of Monroe county: R. A. RICHARDS, judge.  *Reversed, with directions.*

The testator, Joseph B. Rosecrantz, was a resident of Sparta, Wisconsin, and on the 12th day of March, 1895, he made and executed his will.   The members of his family were his wife Adah and three sons, George W., *Frank B.,* and Clark M. Rosecrantz.   Clark M. Rosecrantz was the youngest and unmarried; George W. and *Frank B.* were both married at the time of the making of the will.   Joseph B. Rosecrantz died on the 12th day of February, 1902, seven years after the making of the will, his wife and three sons surviving him.   Clark M. was then unmarried; George W. and *Frank B.* were married to the same persons who were their wives at the time the will was made.   The widow died in 1906.   At her death one third of the estate was paid over to the youngest son, Clark M.   The remainder of the estate was held in trust for the other two sons.   In 1907 *Frank B.* *Rosecrantz* was divorced from his wife, Fannie, who was his wife at the time the will was made and at the time the father died.   There was no issue of her marriage to *Frank B.*   At the time of the divorce Fannie was forty-three years of age.   *Frank* subsequently remarried and now has a daughter by his second wife, born in 1910.   Clark M. died in 1920, leaving a surviving minor son, *John Opdyke Rosecrantz.*   In December, 1922, George W. died without issue, leaving surviving him his wife, who was his wife at the time of the making of the will and at the time of the death

of the father. There was a provision in the will that upon the death of the mother $1,000 might be paid to George W. and *Frank B.* for the purpose of enabling them to engage in business. The remaining provision is the one in controversy here and is as follows:

"But in the event that neither of my said sons wishes to so engage in business, then my said trustee shall continue to hold the entire balance of my said estate, being the remaining two thirds thereof, in trust for my said two sons, George W. and *Frank B. Rosecrantz,* paying unto each of them semi-annually, during their respective lives and that of their present wives, one half of the interest, income, or revenue of said remainder of my estate; but in the event that my said sons George W. and *Frank B. Rosecrantz,* or either of them, should survive their present wives, neither of said wives leaving lawful issue, then the said trustee shall pay unto my said son or sons so surviving absolutely, his one-third share of my estate theretofore held in trust for him.

"But in the event that my said sons George W. and *Frank B. Rosecrantz,* or either of them, should have lawful issue of the body of their present wives, then such issue, upon the death of its father, shall have the share allotted to the father, and further in case the present wives of said sons, George W. and *Frank B. Rosecrantz,* or either of them, shall survive their respective husbands, leaving no lawful issue by them, then the surviving brother or brothers, including my said son C. M. Rosecrantz, shall inherit equally the share of the son so leaving his wife him surviving."

On behalf of *Frank B. Rosecrantz* a petition was filed in the county court praying for a construction of the will, it being the contention of *Frank B.* that by the divorce of his wife, Fannie, he should be held within the terms of the will to be a survivor of his wife, Fannie, and that therefore the trust was terminated and he was entitled to the full enjoyment of the estate theretofore held in trust for him. The county court construed the will in accordance with the contention of *Frank B.,* and from a judgment so construing it the guardian *ad litem* and the guardian appeal to this court.

For the appellants there was a brief by *Miller, Mack & Fairchild,* attorneys for the *Bankers Trust Company,* and *H. J. Masters,* guardian *ad litem,* and oral argument by *Bert Vandervelde,* all of Milwaukee.

For the respondent *Frank B. Rosecrantz* the cause was submitted on the brief of *Bundy, Beach & Holland* of Eau Claire.

ROSENBERRY, J.    It seems quite remarkable that the language of the will could have been so interpreted as to hold that the divorce of the wife, Fannie, constituted her husband her survivor.    This construction of the will is supported by an ingenious and rather circuitous argument in which counsel are compelled to maintain the proposition that a divorced man can properly be spoken of as having survived his wife.

Certainly the word "survive" in its etymological sense has no such meaning.    It is commonly understood to mean and is so defined by lexicographers "to live beyond," "to live longer," and a survivor is one who survives or outlives another person, a time, an event, or thing.    To hold that a husband outlives his wife because he lives beyond the time that he was divorced from her requires an utter disregard of the legal as well as the ordinary meaning of the word "survive."    The word "survive," used in its natural and ordinary sense, means "to outlive." *Hill v. Safe Deposit & T. Co.* 101 Md. 60, 60 Atl. 446; *Reynolds v. Iowa & Nebraska Ins. Co.* 80 Iowa, 563, 46 N. W. 659; *Blanton v. Mayes,* 58 Tex. 422.

The decision of the trial court is supported by an argument to the effect that from the surrounding facts and circumstances it appears that it was the intention of the testator to prevent any part of his estate from passing to the persons who were then the wives of his sons George W. and *Frank B.,* and, inasmuch as the wife, Fannie, is divorced from *Frank B.,* she cannot inherit from him; therefore, the

testamentary purpose is accomplished and the will should be construed accordingly. This is not construing or interpreting a will. It is making an entirely new will for the testator. He used no language appropriate for the expression of any such purpose or intention. It is quite clear that he had other considerations in mind and did not intend to have his son *Frank B.* become the owner of his one-third share in the estate, because in the event of the birth of issue by his then wife the *corpus* of the estate was to pass to the children. We do not understand by what process of reasoning the conclusion can be reached that the termination of the marital relations is equivalent to death in a matter of survivorship. It requires no argument to show the fallacy of such a conclusion. When the language of the testator is plain and unambiguous, the meaning of the language used clear and definite, there is no room for construction or interpretation. An attempt to thwart the testamentary purpose by a strained and unauthorized construction and so defeat the will of the testator or substitute for his will the judgment or decree of the court should not be given judicial approval.

*By the Court.*—So much of the judgment of the county court as holds "that at any time upon termination of the marital relationship with his then wife, either by her death or divorce from her, without issue, the son affected thereby should come into the absolute enjoyment of his one-third of the testator's estate," is reversed and set aside, and the cause is remanded with directions to the county court to enter judgment construing the will to mean that the trust estate shall not be terminated under the facts as they now exist until the death of Fannie, the wife of *Frank B. Rosecrantz* at the time of the execution of the will.